**BURCH v. SMITH et al.**

*Civil Action No. 6307.*

District Court, E. D. Pennsylvania.
April 14, 1948.

W. R. Lorry, of Philadelphia, Pa., for plaintiff.

Thomas F. Mount, of Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

### Findings of Fact.

1. On November 5, 1945, plaintiff was 18 years of age, a citizen of the United States, and a member of the American Merchant Marine.

2. On November 5, 1945, the defendant possessed, owned, operated and controlled the S.S. "Frank C. Emerson" in foreign commerce.

3. On November 5, 1945, plaintiff was in the employ of the defendant as a member of the crew of the S.S. "Frank C. Emerson" in the capacity of ordinary seaman at the rate of $132.50 per month, base wage, plus maintenance, on a foreign voyage from New York, New York.

4. On November 5, 1945, while the vessel was at sea and subjected to high winds, heavy seas, and generally bad weather, plaintiff was directed to proceed to the forepeak in the bow of the vessel; in proceeding pursuant to said orders, at 12:50 P.M. plaintiff was struck by a wave coming over the deck of the vessel, injuring his right leg and disabling him from further duty.

5. The voyage of the S.S. "Frank C. Emerson" terminated at Charleston, South Carolina, on December 29, 1945, and plaintiff was paid off at that time. An examination at Charleston, South Carolina, through the facilities of the U. S. Public Health Service, revealed an oblique fracture of the lower end of the shaft of the right fibula which had by that time healed considerably with a marked lateral displacement of the foot. There were also small chip fractures, and hospitalization was recommended for surgical treatment.

6. The plaintiff who lives at Wyandotte, Michigan, a suburb of Detroit, Michigan, proceeded to the U. S. Marine Hospital at Detroit, Michigan, and after examination was admitted as a hospital patient on January 9, 1946, where he remained receiving surgical treatment and other necessary treatment until May 9, 1946. On that date he was placed on outpatient service and was again admitted as a hospital patient at the same hospital on July 8, 1946, being thereafter confined to the hospital until December 10, 1946. Subsequent to plaintiff's discharge from the U. S. Marine Hospital on December 10, 1946, he continued to suffer disability by reason of the injury to his right ankle and right knee and required further medical attention.

7. As a result of x-ray examinations by specialists made in January, 1947, it was determined that two metal screws had been inserted into the fibula and tibia in the vicinity of the ankle joint in the course of the treatment received at the U. S. Marine Hospital, one of these screws having been subsequently removed prior to the x-ray examination in January, 1947. At the time of this examination there were several areas strongly suggestive of osteomyelitis and the right ankle joint was narrowed. The medical diagnosis was that the bones had healed but that they were in poor position, that the outer ankle bone was infected, that the two bones that made up the ankle joint had separated, and that the joint had developed arthritis. The examination at that time also revealed a large oval body lying loose in the anterior portion of the right knee joint.

8. Plaintiff endeavored to work thereafter and did enjoy three short periods of employment, including 10 days during February, 1947, at the Acme Fast Freight Company, Buffalo, New York; from March 10, to April 9, 1947, at the Wyandotte Transportation Company, Wyandotte, Michigan; from May 5, 1947, to June 5, 1947, at Shwayder Brothers, Inc., Ecorse, Michigan. Because of the persistent attacks of

8

pain in his right knee joint which would frequently lock and thereafter swell up in the vicinity of the knee, as well as his inability to remain standing for any length of time because of the weakness and pain in his right ankle, plaintiff was unable to continue with these jobs and found himself incapable of performing any work which required him to stand or walk for any length of time.

9. Further physical examinations in November, 1947, by the same specialists showed no improvement in plaintiff's condition and indicated that further surgical treatment would be required to correct the conditions in his right ankle and right knee which disabled him and gave him more or less constant pain.

10. At the time of the trial of this matter between November 17, and 20, 1947, plaintiff was still physically disabled by reason of the condition of his right ankle and right knee, his weight and size rendering it doubly difficult for him to use these members in their present condition.

11. Prior to the time of the accident, plaintiff's right ankle and right knee were in good condition, and he was in nowise disabled.

12. Plaintiff's injuries were sustained in the service of the vessel and not by reason of his own misconduct. He has at no time since leaving the vessel refused any treatment proffered him.

13. Plaintiff is entitled to maintenance at the rate of $3.50 per day from the date of his discharge from the S.S. "Frank C. Emerson" on December 29, 1945, to the date of the trial on November 20, 1947, excluding such periods as he was employed for wages by other employers, and periods when he was hospitalized under circumstances where he was under no expense.

14. The total time elapsed between the date of plaintiff's discharge from the vessel to the date of trial, that is, from December 29, 1945, to November 20, 1947, is 691 days, from which should be deducted for maintenance calculations the period of 71 days for his employment during 1947 and 275 for his hospitalization during 1946, leaving a total of 345 days for which maintenance and cure is due. Calculated at the rate of $3.50 per day, this amounts to $1,207.50.

### Conclusions of Law.

1. Plaintiff was injured in the service of the S.S. "Frank C. Emerson" on November 5, 1945.

2. Defendant is liable to the plaintiff for maintenance and cure at the rate of $3.50 per day.

3. Plaintiff is entitled to maintenance and cure from December 29, 1945, to the date of the trial, viz., November 20, 1947, excluding such periods as he was employed for wages by other employers, and such periods as he was hospitalized under circumstances where he is under no expense.

4. Defendant's obligation to pay maintenance to plaintiff did not cease upon plaintiff's discharge from the hospital since the discharge was premature but continued for a reasonable time during which medical treatment may be expected to effect a cure.

5. Under the circumstances of this case, such a reasonable period includes the time from December 29, 1945, to the date of trial, November 20, 1947, being 691 days less 275 days of hospitalization at the U. S. Marine Hospital in Detroit, Michigan, during 1946, and 71 days covering his intervening employment in 1947; plaintiff is entitled to an award for maintenance and cure for a total of 345 days.

6. Plaintiff is entitled to an award of $1,207.50 for maintenance and cure for 345 days at $3.50 per day, without prejudice to any later suit by plaintiff to recover such further maintenance and cure to which he may be entitled subsequent to November 20, 1947.